ROTH, Circuit Judge,
concurring:
The majority concludes that resistance to a coercive population control program *198 includes resistance to China’s ban on procreation by unmarried couples and resistance to the insertion of an IUD. The majority has remanded this case to the BIA for reconsideration of the credible evidence of past persecution, including persecution for resistance to the insertion of the IUD. I believe, however, that the “resistance” language of the statute refers only to resistance to abortion or sterilization. In my opinion, the remand should only consider resistance to these latter two procedures. For that reason, I write separately to address the BIA’s interpretation of the phrase “other resistance to a coercive population control program.” 8 U.S.C. § 1101(a)(42).
Because of the structure of section 1101(a)(42), with the first two phrases of the sentence referring exclusively to those individuals who have been forced to undergo abortion or a sterilization procedure and to individuals who have been persecuted for failure or refusal to undergo such a procedure, I conclude that the third phrase, directed at resistance to a “coercive population control program” refers to resistance only to abortion or sterilization procedures, not to resistance to any method of population control, including, in this instance, IUD insertion. The courts that have examined this issue do not agree with me, but I submit that they have interpreted the statute in the manner that they did because the petitioners before them had been forced to undergo the insertion of an IUD and thus the briefing was skewed in that direction without considering whether it was the correct direction.
Contrary to the interpretations to date of section 1101(a)(42), I conclude that Congress intended the phrase “other resistance” to be interpreted as referring to activities of individuals who are resisting or opposing China’s population control policy. Such activities and individuals might include, for example, a doctor’s refusal to perform abortion or sterilization procedures, a conscientious objector’s circulation of material supporting the ban of abortion and sterilization procedures, or an activist’s organization of public demonstrations in opposition to forced abortion and sterilization.
If the language of section 1101(a)(42) is interpreted as encompassing all actions that “thwart the goals of the [population control] plan and [are] viewed with disfavor by Chinese officials implementing the plan ...”, In re M-F-W- & L-G- 24 I. & N. Dec. 633 (BIA 2008), its scope is too broad and goes beyond what I find to be Congress’s intent. Without a narrower interpretation of this phrase, section 1101(a)(42) could be read to apply to any method of birth control, including, among others, condoms or abstinence. Such a broad interpretation would effectively “afford a safe harbor to all those Chinese who chafe under [China’s population control program].” Li v. Ashcroft, 356 F.3d 1153, 1170 (9th Cir.2004) (Kleinfeld, J., dissenting). This cannot be what Congress intended. As Judge Kleinfeld commented in dissent:
[Pursuant to 8 U.S.C. § 1157(a)(5)], [t]here are only 1,000 asylum spots a year for those seeking asylum under [8 U.S.C. § 1101(a)(42) ], which arguably extended its succor only to those most brutalized by Chinese family policy. By broadening the grant to those who are most peripheral to this class ... we may well be withdrawing American protection from those at the heart of it, persons subjected to forced abortions and sterilizations. The compassion felt by the majority risks a cruel irony of denial of compassion to those who need it most.
*199 Id. (footnote omitted).[1]
For the reasons articulated above, I respectfully concur.

. The numerical limitation set forth in 8 U.S.C. § 1157(a)(5) was repealed in 2005. See Pub.L. 109-13, Div. B, Tide I, § 101(g)(2), May 11, 2005, 119 Stat. 305. The President is now empowered to set, on an annual basis, "the number of refugees who may be admitted under [8 U.S.C. § 1157(a)],..." For Fiscal Year 2010, President Barack Obama determined that no more than 17,000 refugees from East Asia will be granted refugee status. See Presidential Determination No.2008-29, Sept. 30, 2008, 73 F.R. 52385. Although the allocation has changed since Judge Kleinfeld’s dissent was issued, because a limit on the number of refugees that may be granted asylum still exists, his reasoning supporting a narrow construction of the phrase "other resistance to a coercive population control program” remains persuasive.